Case number 23-7116. Chazz Clevinger v. Advocacy Holdings, Inc. Business as One-Click Politics Appellant, Raymond Zenkeek, et al. Mr. Romano for the appellant, Mr. Chase for the appellant. Good morning, Mr. Romano. You may proceed when you are ready. Good morning, and may it please the Court. My name is Anand Romano, Counsel for the Appellant, Advocacy Holdings. I would like to reserve three minutes for rebuttal. This is an appeal, an interlocutory appeal, of a denied preliminary injunction motion seeking to enforce a non-compete against his former CEO. The District Court analyzed only one of the four preliminary injunction factors, whether we established irreparable harm, and concluded that, despite it concluding that it was, quote, a close call, that we had not. We present one assignment of error, but there are actually two questions before this Court. The first question is whether we, in fact, at law, established irreparable harm, and the second is, if so, does this Court have the record to make the full determination that we are entitled to a preliminary injunction? The first question is dispositive, so I'd like to start there, whether we established irreparable harm. We established four facts in the preliminary injunction proceeding, three of which are undisputed, and of those three, one is dispositive. The dispositive fact is the non-compete agreement itself. That agreement contains a contractual stipulation by Mr. Clevenger that irreparable harm would result if he violated the agreement. Can you please speak to whether you forfeited your argument about that stipulation before the District Court? I don't believe that we did, Your Honor. We submitted the evidence in our original preliminary injunction motion. The Court ruled on that motion in the footnote, footnote 2, and then, on reconsideration, the preliminary injunction, the initial preliminary injunction motion, was denied without prejudice, so our view is that all the issues are live if we bring them back. When we brought them back on reconsideration, we supplemented, and there's extensive briefing on that. I think, as a general rule, you can't make arguments on reconsideration that you could have or should have made in the original motion, and it sounds like, from what you're saying, you didn't make any argument about the stipulation in your original motion. It's in the contract, and you included the contract in the evidence, but was the District Court right that you did not make any argument about the stipulation? I don't know if the District Court ruled on that, but Your Honor is right. We did not present any explicit argument on that subject. I think the difference here, though, is that this wasn't just a straight denial of a preliminary injunction motion. The way that the denial was structured was that it was a denial without prejudice, so this isn't something where the court has ruled on it, let's move on. It was the court has ruled on it, but we're really not sure. I'm inviting you to bring it back, which is what we did, and so I agree, though, that, Your Honor, we didn't make any explicit arguments in the initial preliminary injunction motion. There was no issue about, I mean, you had the stipulation, and if you were going to rely on that, it was fully available and, in fact, already before the court in the initial motion for a preliminary injunction. That's correct, Your Honor, not only in the initial preliminary injunction, but in the five preceding TROs, all of which were granted in full by both the Eastern District of Virginia and the lower court here, and the district court here. So the evidence has been in the records, really, since we filed the complaint in the beginning, but I can't say that we made the explicit argument on preliminary injunction. So Delaware law controls this issue as far as we're concerned. This is a substantive issue.  Because Delaware law breathes life into the stipulation, the strength of the stipulation, and what Delaware law says, the Marietta case, the Martin Marietta case, is this is alone sufficient to establish the second prong of the winter test, the irreparable harm. That's the end of the inquiry. Why? Because when you sign a contractual stipulation like that, Delaware says you are waiving your right to contest the second prong in a preliminary injunction here. Now, that doesn't mean that we don't have to prove substantial likelihood of success. It doesn't mean we don't have to prove balance of the equities or the public interest. We still have to prove that on a preliminary injunction. But Delaware law says you are waiving your right to contest what is really the hardest, in many cases, the hardest prong to prove. So that in and of itself is dispositive. That's an error of law. Mr. Romano, that case, that was Chancery Court 2012. I believe it was the Supreme – Delaware Supreme Court 2012. I'm sorry, Supreme Court 2012. Right. And since then, we have three instances from the Chancery Court, 2015, 2022, 2024, observing that the stipulation of that sort is not binding on the court if there's not some evidence beyond the stipulation to support a finding of irreparable harm. Right. And the difference here – I agree with that, Your Honor. That's what the Chancery Court said. I don't think the Supreme Court has said anything. But the difference here is – Well, in Marietta itself, when the court says the contractual stipulations as to irreparable harm alone suffice, it also noted that there were facts supporting that finding. Correct. The difference, I think, the distinction – So we get conflicting statements, but there's never relief in any of these cases unless there were also facts in the record to support. I agree with that, Your Honor. I think the very nuanced distinction is, is it alone sufficient? Yes. Is it mandatory? No. And I think that's what those Chancery cases are saying is, is it a mandatory result? No. But alone, it can be sufficient. But that's what we have here as well. There are three other facts. Alone, it can be sufficient. You mean to say without supporting facts at all? That's what the Martin Marietta case is. The difference being it is sufficient. Martin Marietta is susceptible to that reading, but in fact, there were facts there. And the Chancery Court has thrice read it the way I'm suggesting. I don't think they're inconsistent, actually. Just because something alone is sufficient doesn't mean that it's mandatory. But I would like to get to why this case also has other supporting facts, strong supporting facts. The first one... Before you move on to that, Mr. Romano, I took you to be suggesting that you thought that Delaware law applies under an Erie analysis. The briefing doesn't really go into this, but isn't the question that we would have to conduct an analysis under Erie v. Tompkins to determine whether federal procedural rules apply or whether Delaware law applies on this matter? That's a great point. We make a substantive law argument. The district court and the appellee are saying, no, it's procedural law, that what is irrelevant depends on circuit by circuit. I'm not sure you have to conduct that analysis because, as Judge Ginberg says, or doesn't say but has raised, is there are other facts here. So even under the Sontag analysis, the Smith-Buckley, the D.C. circuit case that they cite and that the district court cite, there is a loss of customers. Mr. Clevenger testified at trial that he said 8 to 12 customers he took over. The invoices say 18 out of 15, but he took those customers. That's a violation of 5. There's no dispute that he started a competing company. That's the biggest issue here. The district court held that those are not incalculable damages, the ones flowing from loss of customers. That's monetary and wouldn't support a finding of irreparable harm. What's wrong there? Correct. And that is an error. If this were one contract, and you can calculate, this isn't a breach of contract case. This isn't loss of contracts. This is loss of customer relationships that have, in each of which, have indefinite revenue streams absent the interference. And what we have is interference, which is what the non-compete is intended to avoid. You are disrupting revenue streams. Yes, these were annual subscriptions, but absent this interference, this would have been and had been up until the interference, back to back to back, indefinite revenues. Those are not calculable at trial. What happens for one year they are, but if you're interfering with the relationship for an indefinite period, we don't know when these relationships would have otherwise ended, if they weren't interfered with. They could have gone on for 10 straight years. We won't be able to do that. That's speculative damages, and I'm not allowed to put on speculative damages at trial. So I think it's an error to say that these are monetizable injuries. They are in the very short term, but the relationship itself you can't monetize. It could be indefinite. It could go 20 years into the future, and we never will know because of the interference that the non-compete was designed to obstruct. Your Honor, I'm already at 10 minutes. I'd like to reserve the remainder of my time. All right, we'll hear from Mr. Chase. Good morning, Your Honors. Kenneth Chase for the appellees. This case presents a circumstance where the trial court's factual findings preclude a finding of irreparable harm, and therefore the trial court correctly denied the motion for a preliminary injunction. That is the case under a pre-winter standard. That is the case in a post-winter world, and that is dispositive of whether a preliminary injunction should be entered. As the court discussed during the argument of the appellant, the argument of whether a contractual stipulation is dispositive wasn't raised in the trial court below. So that issue wasn't raised, could have been raised, admitted that it had been available to have been raised, wasn't raised, and therefore isn't before the court. But even if it was, it's not sufficient. Even the Delaware courts have held that a contractual so-called stipulation is not mandatory. It does not divest a federal court of its equitable power to deny a motion for a preliminary injunction. This record contains findings that the trial court that are unchallenged, the appellant does not challenge any of the factual findings of the trial court. And those factual findings are completely dispositive. The findings are that the appellant has hundreds of customers. The appellant continued to gain customers. The appellant's business is about the same. There's no risk of the appellant's business imminently going out of business, and there's been essentially no change in the business at all. Those findings preclude, as the trial court held, a finding of irreparable harm as to economic damages. Moreover, in the trial court, the appellant agreed that as to loss of customers, those are quantifiable as monetary damages should they prevail at trial. They admitted that. That takes economic damages off the table. Why isn't that just belt and suspenders? They're planning to try to calculate. But Mr. Romano makes an argument today that the indefiniteness going forward, the length of the customer relationship is a factor that interferes with the economic calculus. Sure, Your Honor. And that is why it's not irreparable harm, an imminent risk of irreparable harm, which is required under Rule 65. What they're saying is 20 years from now, perhaps there'll be some attrition problem, but that is the inverse of what is required for a preliminary injunction, which is imminent risk of irreparable harm. And they agreed that they stipulated that the court made a factual finding that they don't dispute that monetary damages calculated at trial would address the economic damages claim. Did Mr. Clevenger say that he exported from his OCP work email? That's a disputed fact, Your Honor. And that wasn't determined. None of the what was striking about the appellant's brief is the lack of citations. All these assertions weren't in the opinion. Mr. Clevenger's so-called contacts that he downloaded or his own contacts, his professional contacts that he's had for 20 years. And so the notion that he downloaded the contacts, they're his contacts, they're his professional contacts. Well, those are going to be issues for trial court. But if you come in and you're a principal at a, at a business and you, you know, make, render your contacts, the customers of a business, there may be an issue with, they're still your contacts in that, in that context. So the notion that telling customers that this, Their service provider is shutting down, is not incalculable damage to the service provider's reputation in your view? Certainly not, Your Honor. And that was addressed by the trial court judge, Judge Cobb. She held as to the reputation damages, that there's not much in the record, that there's no evidence that the customers would migrate back. The assertion that there was a representation that the appellant's business is shutting down is actually a necessary assertion for the relief that they're  But in fact, that's not what they testified to. They deny that the appellant's business is, is shutting down. Who knows? But then in their briefs, they say, well, all these costs might put the company out of business. So that renders the assertion by Mr. The allegation that an assertion by Mr. Clevenger was made as to the future of advocacy holdings. That renders it probably true, according to what they would actually have to show in this motion, which was denied. They didn't show it. Their principal testified, unlike any of the other cases where there was some support for a finding of irreparable harm, they pled themselves and they admitted themselves out of it. That makes this case more clear than any of the other cases in the record, because not only is there an insufficient showing of irreparable harm, there is the factual findings, which are not challenged. Preclude, prevent the court from making that finding. Addressing the pre-winter and post-winter standards. Under the pre-winter standard with city fed 1995 case, the D.C. circuit held that a finding that irreparable harm was not shown is sufficient to deny a motion for preliminary injunction. The court needs needs to go no further. That's finding precedent in the third circuit, the 10th circuit, the 11th circuit and city fed in the D.C. Once the trial court determines that there's no irreparable harm, then what are we doing here? Why are the rest of the factors, why do they need to be discussed? But even if they did need to be discussed, they were discussed. And if there's one factor that's zero, then the other factors are not applicable. Winter only raised the rigor of the standard, requiring an independent showing of irreparable harm. Some showing. The argument might be that a lower showing of irreparable harm might be sufficient if there was a higher showing of likelihood of success on the merits. There was no finding of a likelihood of success on the merits as to any breach of a non-compete. There was no finding. So that's a zero of likelihood of success on the merits. And then as to irreparable harm, there's also a zero in the record here. It appears on the irreparable harm that the district judge applied federal law. If we think that Delaware law applies to or might apply to the standard for what constitutes irreparable harm, do we need to reverse and remand? No. Why not? Because Delaware law and D.C. are not inconsistent. Both bodies of law indicate that even if there was a contractual stipulation, which is an argument they waived, but even if they hadn't, that's not binding on a federal court. What about the other inputs to irreparable harm? Those are also not established. What law applies to them? If Delaware law governs the entire irreparable harm element, and that wasn't recognized by the district court, do we need to? Federal law, Your Honor. Irreparable harm analysis is not part of a cause of action. As to likelihood of success on the merits, that's a state law issue. As to whether irreparable harm is shown to the degree that's required under Rule 65, that's under D.C. Circuit federal law precedent. I'm not sure that it's dispositive for purposes of an area analysis, whether it's part of a cause of action. I think it's a much more nuanced. It's absolutely nuanced, Your Honor. It's apples and oranges, and it ships passing in the night. Whether it could be irreparable harm in Delaware is irrelevant, because the contractual issue under Delaware law is as to the issue of likelihood of success on the merits. Irreparable harm is not a state law question under federal Rule 65. They brought the case in federal court. They moved for an injunction under federal Rule 65. For them to then say, wait a minute, Delaware law should control a federal judge sitting in a court of equity, there's no precedent for that at all. And they didn't cite a single federal case that supports that. That sounds more like a forfeiture argument than a substantive law argument. Well, it's forfeiture, but even if it wasn't forfeited, it is federal law that governs the standard under Rule 65. Thank you. Thank you, Your Honor. Did Mr. Romano reserve any time for rebuttal? I will. Thank you, Your Honor. I just want to make two points here, and it goes to Judge Pillars and Judge Ginsburg's points of stipulation versus stipulation plus facts. That constitutes, like I said, there are four facts. There's the stipulation, which, under the Marietta case, says by itself is sufficient. There are three other facts that were established. The first was the loss of customer relationships through Mr. Clevenger's testimony and the invoices. The second, the trial court found, which is the theft and misuse of the proprietary information, the theft of the new website and implementation. The trial court found that fact. That is an established fact. And the third is the reputational damage, and counsel is right. There was, quote, not much in the record, but there was something. There was an affidavit from a client of ours that said that there was some chatter around whether they were confused and whether we were shutting down. Wait a minute. Was there a finding or not? There was not a finding. There was the trial court held that there was, quote, not much on reputational damage. Now, that's something. And it's something when there is proven customer relationships that were  It's something when there is a found fact of theft and misuse of proprietary information. The district judge did enter partial preliminary action with respect to the use of the website. Correct. That was under the. Not the relief relating to the harm that you were just discussing. No, that was that was pursuant to the second cause of action, which was a breach of fiduciary duty. What we're trying to enforce here and what we think the district court aired on was that we were count one, which was the breach of the non-compete. We're trying to enforce the non-compete three provisions of it. One is that he can't even have or own a business that competes. He's established that he's done that. He can't solicit and steal customers and he can't steal proprietary information. So that third piece is also under breach of contract. The posture here is a little bit unusual in that we're some many months down the road. The you haven't didn't seek expedition on this. No. And there's been water under the bridge. Has any, any imminent harm likely to occur already occurred? There was a lot of discussion about this. I have been dressed down in the past for seeking emergency relief. When courts have said, this isn't a life or death situation. The district court in this case and our client testified, we're not on the brink of collapse. The second point I wanted to make was that it can't be that the linchpin of enforcement of a non-concrete agreement is, are you on the brink of collapse? Coca-Cola would never be able to enforce a non-compete agreement. Also the law upon which they rely for that is when there's only monetary damages. That's not what we're talking about here. We're talking about relationships and proprietary information and and, and reputational damage here though. So, so there's no, no, the answer to your question is we are not on the brink of collapse. We are headed that way and we are prepared to move if we get there, but it doesn't seem right justice at all. If we have to wait until we're about ready to go out of business before we enforce a non-compete against our former CEO. Ask about maybe some overlap between the reputational injury and the monetary injury where the alleged misrepresentations we find only to the advocacy customers that Clevenger was soliciting. In other words, is Clevenger alleged to have misrepresented to anyone other than the advocacy customers he was soliciting? There's nothing in the record to suggest that it was outside of that, but of course the only context that we have in a short period of time are our own customers. And so that's, we thought that that was the most important thing. I don't know in real life if that's the case, but there's nothing in the record that suggests that Clevenger was other than on, on his website to the world at large that he was contacting non non customers to, to spread rumors about that. Thank you very much. Thank you submitted.
judges: Pillard; Walker; Ginsburg